IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT BERGER, | : | |
| Plaintiff | : | |
| | : | No. 1:21-cv-00351 |
| v. | : | |
| | : | (Judge Kane) |
| WELTMAN, WEINBERG & REIS, | : | |
| LPA, | : | |
| Defendant | : | |

**MEMORANDUM**

Plaintiff Robert Berger ("Plaintiff") asserts claims against Defendant Weltman, Weinberg

& Reis, LPA ("Defendant") under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.

§§ 1692-1692p.[1]  Presently before the Court is Defendant's motion for judgment on the

pleadings pursuant to Federal Rule of Civil Procedure 12(c).  (Doc. No. 18.)  For the reasons that

follow, the Court will grant Defendant's motion (Doc. No. 18) and direct judgment in its favor

and against Plaintiff.

**I.      BACKGROUND**[2]

In November 2019, Defendant, as a debt collector on behalf of Branch Banking and Trust

Company ("BBTC"), filed a state court complaint alleging that Plaintiff and Cindy Berger (the

"Bergers") defaulted on a 2008 Retail Installment Contract and Security Agreement (the

"Contract") for the sale of a motorhome.  (Doc. 1-1 at 27-28.)  BBTC's complaint was

---

[1] Plaintiff initiated this action in state court on November 13, 2020 (Doc. No. 1-1), and
Defendant removed the case to this Court on December 30, 2020 (Doc. No. 1).  On June 24,
2021, the Court stayed discovery pending resolution of Defendant's motion for judgment on the
pleadings.  (Doc. No. 17.)

[2] This background is drawn from the allegations in Plaintiff's complaint, which the Court has
accepted as true, as well as exhibits attached to his complaint and matters of public record.  See
Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004); see also Phillips v. Cnty. of
Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

accompanied by a copy of the Contract (id. at 29-30), as well as a Certificate of Compliance

("COC"), signed by one of Defendant's attorneys, indicating: "this filing complies with the

provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case

Records of the Appellate and Trial Courts" (id. at 32).  The "provisions" referenced in the COC

pertain to § 213.81 of Title 204 of the Pennsylvania Code.  (Id. ¶ 9.)  Section 213.81 classifies

certain documents as confidential and requires that they be "file[d] with a court or custodian

under a cover sheet designated 'Confidential Document Form.'"  See id. § 213.81, Section

8.0(A).

      Plaintiff alleges that Defendant violated the FDCPA because its attorney certified

compliance with § 213.81 but did not file the Contract under the required cover sheet to maintain

its confidentiality.   (Doc. No. 1-1 ¶¶ 17-18.)  Plaintiff avers that the Contract is confidential

because it consists of "loan application documents," which § 231.81 defines as confidential

"Financial Source Documents."  (Id. ¶¶ 10-11); see 204 Pa. Code § 213.81, Sections 1.0(J),

8.0(A); see also id., Section 7.0(D) (providing that the "[p]arties and their attorneys shall be

solely responsible for complying with the provisions" of the regulation).  More specifically,

Plaintiff maintains that the Contract "contains loan application documents delineating the accrual

of an alleged debt to [Plaintiff]."  (Doc. No. 1-1 ¶ 13.)  Based on the allegations in his complaint,

Plaintiff asserts that Defendant violated 15 U.S.C. §§ 1692, 1692e, 1692e(8), 1692e(10), 1692f,

1692f(8), and 1692d.  (Id. ¶¶ 23-90.)[3]  He seeks monetary damages and a permanent injunction,

among other relief.  (Id. at 18-19.)

---

[3] Plaintiff's complaint and brief in opposition appear to refer to "1692(d)" and "1692d"
interchangeably, but 1692(d) reflects "Congressional findings and declaration of purpose"
concerning the impact of improper debt collection practices on interstate commerce.  See 15
U.S.C. § 1692(d).  Plaintiff's allegations and arguments make clear that he is invoking § 1692d,
which prohibits harassing or abusive conduct, see id. § 1692d, and not § 1692(d).

Defendant filed the pending motion for judgment on the pleadings and a brief in support

on July 16, 2021.  (Doc. Nos. 18-19.)  Plaintiff filed a brief in opposition on August 12, 2021

(Doc. No. 22), after the Court granted him an extension of time to do so (Doc. No. 21).

Defendant filed a reply brief two weeks later.  (Doc. No. 25.)  Having been fully briefed,

Defendant's motion is ripe for disposition.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that a party may move for judgment on

the pleadings once the pleadings are closed.  See Fed. R. Civ. P. 12(c).  "A motion for judgment

on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed

under the same standards that apply to a Rule 12(b)(6) motion."  Revell v. Port Auth., 598 F.3d

128, 134 (3d Cir. 2010).  The only significant difference between a Rule 12(c) motion and Rule

12(b)(6) motion is that "on a motion for judgment on the pleadings, the Court reviews not only

the complaint, but also the answer and written instruments attached to the pleadings."  See Iseley

v. Talaber, No. 1:05-cv-444, 2008 WL 906508, at *2 (M.D. Pa. Mar. 31, 2008) (citing 2 Moore's

Federal Practice Civil § 12.38 (2004)).

Accordingly, in assessing such a motion, "the court must 'view the facts presented in the

pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving

party,' and may not grant the motion 'unless the movant clearly establishes that no material issue

of fact remains to be resolved and that he is entitled to judgment as a matter of law.'"  See

Wolfington v. Reconstructive Orthopaedic Associates II PC, 935 F.3d 187, 195 (3d Cir. 2019)

(quoting In re Asbestos Prods. Liab. Litig. (No. VI), 822 F.3d 125, 133 n.6 (3d Cir. 2016)).  If

the facts alleged "raise a right to relief above the speculative level," then the claim is "plausible

on its face" and will survive a motion to dismiss or a motion for judgment on the pleadings.  See

Iseley, 2008 WL 906508, at *2 (internal quotation marks omitted).  In connection with the

motion, the court considers the pleadings, the exhibits attached thereto, matters of public record,

and "undisputedly authentic" documents if the plaintiff's claims are based on those documents.

See id. (quoting Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196-

97 (3d Cir. 1993)).

## III.   DISCUSSION

The FDCPA was enacted to "protect consumers from unfair, abusive, and deceptive debt

collection practices."  See Staub v. Harris, 626 F.2d 275, 276-77 (3d Cir.1980).  The statute

provides for a private right of action against a debt collector for violations of its provisions.  See

15 U.S.C. § 1692k(a).  To state a cause of action of action under the FDCPA, a plaintiff must

allege that: "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's

challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the

defendant has violated a provision of the FDCPA in attempting to collect the debt."  See

Douglass v. Convergent Outsourcing, 765 F.3d 299, 303 (3d Cir. 2014).  Relevant here, the

FDCPA proscribes the use of "false, deceptive, or misleading representation or means in

connection with the collection of any debt," see 15 U.S.C. § 1692e, the use of "unfair or

unconscionable means to collect or attempt to collect any debt," see id. § 1692f, and any

"conduct the natural consequence of which is to harass, oppress, or abuse any person in

connection with the collection of a debt," see id. § 1692d.[4]

---

[4] Sections 1692e, 1692f, and 1692d provide lists of non-exhaustive examples of conduct that violates the respective sections.  See 15 U.S.C. §§ 1692e(1)-(16), 1692f(1)-(8), 1692d(1)-(6). Plaintiff asserts that Defendant violated these statutes generally and, more specifically, by the following alleged conduct: (1) "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false . . ." (in violation of § 1692e(8)); (2) "us[ing] . . . false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" (in violation of § 1692e(10)); and (3)

Upon careful review of the pleadings, the parties' arguments, and the applicable law, the Court concludes that Defendant is entitled to judgment in its favor under Rule 12(c).  Plaintiff's claims rest on three mistaken premises: (1) the Contract is a "loan application document[]" as defined in § 231.81; (2) violations of § 231.81 can per se give rise to FDCPA violations; and (3) Defendant's filing of an unredacted copy of the Contract in connection with BBTC's state court action constituted the "disclosure of confidential information capable of identifying [Plaintiff] as an alleged debtor" in violation of the FDCPA.  Because Plaintiff's claims are interrelated and overlap as to their factual and legal underpinnings, the Court will address the claims under §§ 1692e, 1692f, and 1692d as they are implicated in each of the premises upon which Plaintiff bases his claims.

Concerning Plaintiff's first mistaken premise, the Court agrees with Defendant that the Contract is not a "loan application document[]" as defined in § 231-81.  Rather, the Contract is, as its title suggests, a contract for the sale of a motorhome, and Defendant was accordingly required to attach the Contract to BBTC's state court complaint under Pennsylvania Rule of Civil Procedure 1019(i) (providing, in part, that "[w]hen any claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the material part thereof . . .").  Nowhere in the Contract does it indicate any of the hallmarks of a loan application—i.e., essential financial and other borrower information upon which a lender could base a decision to lend, see infra, such as the Bergers' social security numbers, banking information or statements, tax returns, credit

___

"[u]sing any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business" (in violation of § 1692f(8)).  (Doc. No. 1-1 ¶¶ 42-43, 46, 51-52, 67-68.)  Plaintiff also cites to § 1692 as a basis for liability, but § 1692 does not itself delineate bases for bringing an FDCPA action and instead defines "Congressional findings and declaration of purpose."  See 15 U.S.C. § 1692(a)-(e).

scores, or wage statements.   (Doc. No. 1-1 at 29-30.)  To the contrary, the two-page Contract

merely reflects the Bergers' agreement to purchase the motorhome from Lazydays RV Center, to

provide a security interest in the motorhome, to pay principal and interest, and to make payments

in accordance with a schedule.  (Id. at 29.)  The Contract also contains the amount financed,

together with the finance charge, interest rate, and total sales price.  (Id.)

That the Contract is not a loan application is supported by the plain meanings of the

words "contract," "installment contract," "application," and "loan application."  A contract is

"[a]n agreement between two or more parties creating obligations that are enforceable or

otherwise recognizable at law."  See Contract, Black's Law Dictionary (11th ed. 2019).  It is "the

writing expressing" a promise or set of promises.  See id.  An "installment contract" is a contract

that requires "payments in separate increments . . . ."  See Contract, Black's Law Dictionary

(11th ed. 2019).  In contrast, an "application" is defined as "[a] request," with the verb "apply"

meaning "[t]o make a formal request or motion."  See Application, Apply, Black's Law

Dictionary (11th ed. 2019).  A century-old edition of Black's Law Dictionary defines "loan

application" as a document "on which the lender bases the decision to lend" based on "essential

financial and other borrower information" set forth within the document.  See Loan Application,

Black's Law Dictionary Free Online Legal Dictionary 2nd Ed., https://thelawdictionary.org/loan-

application/ (last visited Sept. 21, 2021).  Applying these definitions here yields the inevitable

conclusion that the Contract is not, as Plaintiff contends, a loan application.  The Contract

reflects a writing expressing a set of promises, bears no indicia of an ordinary loan application,

and lacks the type of "essential financial [or] other borrower information" upon which lenders

generally base decisions to lend.[5]

Since the Contract is not a confidential "loan application document[]," Defendant's

COC—by which its attorney certified compliance with § 231.81—was neither false nor

misleading, a required element under § 1692e of the FDCPA.  Plaintiff's claim for relief under

the general scope of § 1692e is therefore implausible, as are his claims under the § 1692e

subdivisions upon which he relies.  See 15 U.S.C. § 1692e(8) (prohibiting the communication or

threatened communication of "credit information which is known or which should be known to

be false"), (10) (prohibiting the use of any "false representation or deceptive means to collect or

attempt to collect any debt or to obtain information concerning a consumer").  The Court will

therefore grant judgment in Defendant's favor as to Plaintiff's § 1692e claims.  Further, to the

---

[5] Also notable is the fact that "Financial Source Documents" are defined as the following: (1) tax returns and schedules; (2) W-2 forms and schedules including 1099 forms or similar documents; (3) wage stubs, earning statements, or other similar documents; (4) credit card statements; (5) financial institution statements; (6) check registers; (7) checks or equivalent; and, as implicated here, (8) loan application documents.  See 204 Pa. Code § 213.81, Section 1.0(J).  Considering the scope of "loan application documents" in the context of the first seven categories of protected documents, the Court is unable to countenance Plaintiff's position that a contract for the sale of a motorhome, with the limited information provided in the Contract here, constitutes a loan application or "loan application document[]."

In asserting that the Contract is a loan application, Plaintiff relies on the Motor Vehicle Sales Finance Act ("MVSFA"), 12 Pa.C.S.A. § 6221(e).  (Doc. No. 23 at 9.)  However, the provision upon which he relies—§ 6221(e)—merely provides for disclosures that an "installment seller" must provide "[p]rior to a buyer's execution of an installment sales contract . . . ."  See id. § 6221(e)(1).  Section § 6221(a) of the same statute sets forth the necessary elements of "[a]n installment sale contract," i.e., that it be in writing, "contain all the agreements between a buyer and an installment seller relating to the installment sale of the motor vehicle sold," be signed by the buyer and seller, and "be complete as to all essential provisions before the buyer signs the contract."  See id. § 6221(e).  This is precisely what the Contract did here.  Contrary to Plaintiff's position, the fact that § 6221(e)(2)(iii) requires an installment seller to "advise [a buyer] that the purchase of specific items related to acquiring the motor vehicle is voluntary and not required as a condition of the buyer's receiving the installment sale contract loan," see id. § 6221(e)(2)(iii) (emphasis added), does nothing to advance the argument that the Contract at issue here "is a loan" (Doc. No. 23 at 9).

extent that Plaintiff's §§ 1692f and 1692d claims are also based on the purportedly false COC

(see, e.g., Doc. No. 23 at 31 (asserting that Defendant's false COC constituted "inherently unfair

or unconscionable means" to collect a debt under § 1692f)), those claims are implausible for the

same reasons.  Stated differently, all of Plaintiff's claims based on the purportedly false COC are

unavailing, and therefore, Defendant is entitled to judgment in its favor and against Plaintiff with

regard to those claims.

   Plaintiff's second mistaken premise is that Defendant violated the FDCPA simply by

violating a state procedural requirement.[6]  Violations or noncompliance with procedural or other

rules—even violations of the Federal Rules of Civil Procedure—do not themselves give rise to

FDCPA violations unless there is also a violation of an FDCPA provision.  See Simon v. FIA

Card Servs., N.A., 732 F.3d 259, 270 (3d Cir. 2013) (noting that the issue of whether subpoenas

failed to comply with a procedural rule is a preliminary inquiry that must be followed by an

inquiry as to "whether the alleged failures to comply also violated" FDCPA provisions) (citing

LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1192 (11th Cir. 2010) (rejecting the notion

that "all debt collector actions in violation of state law constitute per se violations of the

FDCPA," holding instead that the conduct or communication at issue must also violate a relevant

FDCPA provision).  Accordingly, even if Defendant had falsely asserted compliance with §

231.81, Plaintiff cannot maintain an FDCPA claim without showing a specific violation of one of

the statute's provisions.

   This leads to Plaintiff's third mistaken premise—that Defendant's filing of an unredacted

copy of the Contract, irrespective of § 231.81—violated the FDCPA.  Plaintiff relies heavily on

---

[6] Although the Court's remaining discussion applies in part to Plaintiff's deficient § 1692e claims, the only potentially viable claims that remain are those asserted pursuant to §§ 1692f and 1692d, neither of which, by their terms, require false or misleading communications.

Douglass, 765 F.3d 299, where the United States Court of Appeals for the Third Circuit held that

"disclosure of a consumer's account number on the face of a debt collector's envelope violates §

1692f(8) . . . ."  See id. at 300.  Section 1692f(8), to reiterate, prohibits the use of "any language

or symbol, other than the debt collector's address, on any envelope when communicating with a

consumer by use of the mails or by telegram . . . ."  See id. at 303.  In reaching its holding, the

Third Circuit stated that § 1692f "evinces Congress's intent to screen from public view

information pertinent to the debt collection," noting that disclosure of Douglass's account

number "implicate[d] a core concern animating the FDCPA—the invasion of privacy."  See id. at

302-03 (citing 15 U.S.C. § 1692(a) (acknowledging the "abundant evidence of the use of

abusive, deceptive, and unfair debt collection practices by many debt collectors," which practices

"contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and

to invasions of individual privacy")).

      The Court finds Plaintiff's reliance on Douglass unavailing.  As an initial matter,

although § 1692f(8) only applies to the mailing of envelopes, Plaintiff correctly observes that §

1692f's subdivisions merely set forth nonexclusive examples of violative conduct, see supra at

n.3.  Nevertheless, placing an individual's account number on the face of a debt collection-

related envelope stands in stark contrast to the act of attaching a sales contract to a complaint

pursuant to a state procedural requirement.  While the FDCPA no doubt protects against debt

collection-related invasions of privacy, the statute is not without limits.  As Douglass instructs, if

application of the FDCPA "'will produce a result demonstrably at odds with the intentions of its

drafters,' then [courts] are obligated to 'construe [the] statute[] sensibly and avoid constructions

which yield absurd or unjust results.'"  See Douglass, 765 F.3d at 302 (quoting United States v.

Fontaine, 697 F.3d 221, 227 (3d Cir. 2012)).

In the Court's view, imposing liability on Defendant based on the conduct alleged here would be absurd and unjust and do nothing to further the FDCPA's purposes, namely to "eliminate abusive debt collection practices by debt collectors" and protect against invasions of privacy.[7]   See Douglass, 765 F.3d at 302 (internal quotation marks omitted).   This is so because Defendant was required to attach the Contract to BBTC's state court complaint, attachment of the unredacted Contract did not violate § 231.81, and the Contract itself does not include any account numbers or other comparably sensitive information.   While 1692f's subdivisions are indeed nonexclusive, tellingly, none come close to prohibiting the conduct alleged here.   It simply cannot be said that Defendant's act in attaching the Contract to BBTC's complaint constituted unfair or unconscionable means to collect a debt.   This is particularly true given that Defendant did not falsely certify compliance with § 231.81.   In short, Defendant's conduct here runs "far afield of the original intent behind the FDCPA," see Ocampo v. Client Servs., Inc., No. 18-cv-4326, 2019 WL 2881422, at *3 (E.D.N.Y. July 3, 2019), and the Court will therefore grant judgment in Defendant's favor and against Plaintiff concerning his § 1692f claims.

The Court has addressed all but Plaintiff's claim that Defendant violated § 1692d, but his reliance on § 1692d is unavailing for the same reasons as his other claims.   Section 1692d provides that a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."   See id. §

---

[7] The FDCPA's legislative history more fully indicates that the statute was aimed at addressing "a widespread and serious national problem" of collection abuse, including "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process."   See S. Rep. No. 95-382, at 1-2 (1977), as reprinted in 1977 U.S.C.C.A.N. 1695, 1696.   None of this conduct (or similar or analogous conduct) is at issue in this case.

1692d.  The Court has already dispensed with Plaintiff's contention that Defendant falsely

certified compliance with § 231.81 and further held that Defendant's conduct in attaching the

Contract to BBTC's complaint did not run afoul of the FDCPA's intended purposes.  The non-

exhaustive list of conduct that violates § 1692d, although not dispositive as to this aspect of

Plaintiff's complaint, provides additional support for the Court's conclusion that Defendant did

not violate the FDCPA.  Section 1692d prohibits, among other conduct, the following:

> (1)  The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

> (2)  The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

> (3)  The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.

> (4)  The advertisement for sale of any debt to coerce payment of the debt.

> (5)  Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

> (6)  Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

See 15 U.S.C. § 1692d.  This list of violative conduct aligns with the general purposes of the

FDCPA insofar as they prohibit "obscene or profane language, threats of violence, . . . disclosing

a consumer's personal affairs . . . ," and the like.  See S. Rep. No. 95-382, at 1-2 (1977), as

reprinted in 1977 U.S.C.C.A.N. 1695, 1696.  Glaringly absent from the same list is any

prohibition—or closely analogous prohibition—on the act of attaching a sales contract to a civil

complaint pursuant to a mandatory procedural rule, where the contract does not disclose any

more information than the basic terms of the agreement required, e.g., the sales price, security

interest, terms of installment payments, interest rate, payment schedule, and the parties'

signatures.  Accordingly, the Court will grant Defendant's motion for judgment on the pleadings as to Plaintiff's claims brought pursuant to § 1692d.

## III.   CONCLUSION

For the foregoing reasons, viewing the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to Plaintiff, the Court finds that Defendant has clearly established that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.  The Court will therefore grant Defendant's motion (Doc. No. 18) for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  An appropriate Order follows.